```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
GEORGE CLANCY
```

                          Plaintiff,               **<u>MEMORANDUM AND ORDER</u>**
                                                                      2:15-cv-7321 (DRH)(SIL)

    - against –

```
TOWN OF SOUTHOLD, TOWN OF
SOUTHOLD POLICE DEPARTMENT,
POLICE OFFICER RORY FLATLEY, in his
individual capacity, and POLICE OFFICER
PETER ONUFRAK, in his individual capacity,

                         Defendants.
----------------------------------------------------------X
```

**APPEARANCES**

**SCOTT MICHAEL MISHKIN, P.C.**
Attorneys for Plaintiff
One Suffolk Square, Suite 520
Islandia, NY 11748
By:    Scott M. Mishkin, Esq.
          Kyle T. Pulis, Esq.

**SMITH, FINKELSTEIN, LUNDBERG, ISLER & YAKABOSI, LLP**
Attorneys for Defendants
456 Griffing Avenue
Riverhead, NY 11901
By:    Daniel P. Barker, Esq.
         Frank A. Isler, Esq.
         Jean K. Delisle, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

      Plaintiff George Clancy ("Plaintiff") brought this action against the Town of Southold ("Town"), the Town of Southold Police Department ("Police Department"), Police Officer Rory Flatley ("Flatley"), in his individual capacity, and Police Officer Peter Onufrak ("Onufrak"), in

his individual capacity, (Defendants Onufrak and Flatley together, "Defendant Officers," all defendants, "Defendants"), for false arrest, false imprisonment, violations of the Fourth Amendment, violations of the Fourteenth Amendment, and violations of the laws of the State of New York. (Compl. [DE 1] at 1.) The action was later dismissed as to Defendant Police Department.

Presently before the Court is Defendants' motion to dismiss pursuant to Fed. R. Civ. P 12(b)(6) ("Rule 12(b)(6)"), for failure to state a claim as to all claims against Defendant Town and Defendant Onufrak, and as to the Eighth Amendment claim against Defendant Flatley.

For the reasons explained below, the motion to dismiss under Rule 12(b)(6) for failure to state a claim is granted in part and denied in part.

## BACKGROUND

The following relevant facts come from the First Amended Complaint ("FAC") and are assumed true for purposes of this motion.

On September 28, 2014, Plaintiff drove his motor home to a friend's house located on Deephole Road in Mattituck, New York. (FAC [DE 14] ¶¶ 18.) While approaching his friend's home, Plaintiff was pulled over by a Police Department patrol car. (*Id.* ¶ 19.) Plaintiff parked at his friend's house and was approached by Defendant Flatley. (*Id.* ¶ 20.) Defendant Flatley directed plaintiff to get out of his vehicle, which Plaintiff obliged. (*Id.* ¶¶ 21–22.) Defendant Flatley asked Plaintiff if he had been drinking, to which Plaintiff replied that he had not. (*Id.* ¶ 23.) Defendant Flatley then asked Plaintiff to turn around and face the car, with which request Plaintiff complied without argument. (*Id.* ¶ 24.) Defendant Flatley allegedly grabbed Plaintiff by the arm and handcuffed Plaintiff's hands behind his back, "tightening the handcuffs to the point that they caused severe bruising on Plaintiff's wrists and cut off the circulation to

Plaintiff's hands." (*Id.* ¶ 25.) Defendant Flatley also allegedly "stabbed plaintiff's wrist with the open end of the handcuff." (*Id.* ¶ 26.) At that time, Plaintiff asked that Defendant loosen the handcuffs and advised Defendant that he wanted an attorney. (*Id.* ¶ 27.) Defendant Flatley ignored the request and forcibly turned Plaintiff around to conduct a field sobriety test. (*Id.* ¶ 28.) "Without any justification, Defendant Flatley then took Plaintiff's glasses, grabbed Plaintiff by the arm, forcibly spun him around so that Plaintiff was facing the car, struck Plaintiff in the back of the neck, and slammed Plaintiff's head into the hood of the police car, causing an open wound above Plaintiff's eye and a bruise to Plaintiff's neck." (*Id.* ¶ 30.) "Plaintiff's hands were cuffed the entire time and Plaintiff was in no way resisting arrest or attempting to evade Defendant Flatley." (*Id.* ¶ 31.) After that point, Plaintiff requested medical attention, which Defendant Flatley refused. (Id. ¶¶ 34.)

Plaintiff repeatedly asked Defendant Flatley to loosen the handcuffs, but Defendant Flatley ignored these requests and forced Plaintiff into the back of the police car, slamming the door on his wrists and causing further injury. (*Id.* ¶¶ 36–38.) Plaintiff's "wrists were swollen and severely bruised up to his elbows, his hands were red and tingling due to loss of circulation." (*Id.* ¶ 39.) Plaintiff again requested medical attention, but Defendant Flatley refused his requests even though blood was running down his face. (*Id.* ¶¶ 41–42.) Plaintiff claims that from the time he was pulled over until he was placed in the car, he complied with every request made by Defendant Flatley and did not resist arrest. (Id. ¶ 43.)

At the police station, Plaintiff was handcuffed to a desk in such a way that he was forced to stand and could not sit for several hours. (Id. ¶ 45.) Plaintiff was refused medical care, verbally harassed, and his safety was threatened. (Id. ¶ 46.) For example, Defendant Onufrak "repeatedly swore at Plaintiff, referred to him as an idiot, and stated 'I would happily give up my

$110,000 a year job to kick your [expletive] [expletive].'" (Id. ¶ 48.) He also repeatedly told Plaintiff that he was "going to kick the [expletive] out of" him. (Id. ¶ 49.) Plaintiff remained handcuffed to the desk for several hours, and his requests for medical attention were repeatedly denied. (Id. ¶ 50.) Sergeant Scott Latham, who is a supervisor, was present during the events in question and allegedly never took any action despite being aware of Plaintiff's repeated requests to loosen the handcuffs and to receive medical attention. (Id. ¶¶ 51–54.)

After several hours, Plaintiff was brought to the hospital, where the doctors glued the wound shut above Plaintiff's eye and treated and photographed the bruises on Plaintiff's wrists. (Id. ¶¶ 55–56.) Plaintiff was then brought back to the police station, where he was handcuffed to a desk in a standing position for several more hours. (Id. ¶ 57.) Plaintiff was eventually put into a cell, but only after Defendant Onufrak removed Plaintiff's socks and shoes, stating "make sure you get his socks and shoes, he'll be uncomfortable in there.'" (Id. ¶ 61.) Plaintiff was left in the cell with nothing on his feet and no blanket. (Id. ¶ 62.) Sergeant Latham was present throughout this, but did not intervene. (Id. ¶ 63.) Plaintiff was left in the cell until 1:00 p.m. the following day, at which point he was brought to court for an arraignment, during which he was charged with multiple Vehicle and Traffic Law violations. (Id. ¶ 64.)

Plaintiff alleges that he continues to suffer "physical and emotional harm" from his treatment by Defendants. (Id. ¶ 65.) He later learned from his doctor that he had a "tumor in the back of his neck that had broken open as a result of Defendant Flatley striking him, causing cancer cells to spread throughout his body." (Id. ¶ 66.)

Plaintiff initiated the instant action on December 23, 2015, after serving Defendants a Notice of Claim in Writing and allowing more than 30 days to elapse. (Id. ¶ 68.) Plaintiff filed

an Amended Complaint on September 15, 2017, and Defendants brought their motion to dismiss on December 7, 2017.[1]

## LEGAL STANDARD

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads

---

[1] This action was stayed for over a year pending the resolution of the underlying criminal charges in state court against Plaintiff.

facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

## DISCUSSION

I. *The Parties' Arguments*

　　a. Plaintiff's Arguments

In his Amended Complaint, Plaintiff sets out three causes of action and a fourth alternative cause of action. The first cause of action is brought against Defendant Flatley for excessive force in violation of Plaintiff's Fourth Amendment Rights pursuant to 42 U.S.C. § 1983. (FAC ¶¶ 70–80.) The second cause of action is brought against the Town and Defendant Officers for violations of Plaintiff's Fourteenth Amendment rights pursuant to § 1983. (*Id.* ¶¶ 81–92.) The third cause of action is brought against all Defendants for assault and battery. (*Id.* ¶¶ 93–102.) The fourth cause of action is brought alternatively against Defendant Southold for negligent failure to supervise/train. (*Id.* ¶¶ 103–109.)

　　b. Defendants' Arguments

Defendants claims in their Memorandum in Support that that all federal and state constitutional claims should be dismissed as against the Town of Southold because a municipality may not be held liable for federal § 1983 claims under the doctrine of respondeat superior, "and there is no allegation of a formal policy or widespread practice that caused a constitutional violation, or failure to train its police officers that rises to a deliberate indifference

to the constitutional rights of those within its jurisdiction." (Mem. in Supp. [De 15-1] at 1.) Defendants also argue the Amended Complaint should be dismissed with regards to the allegations of cruel and unusual punishment under the Eighth Amendment and/or Fourteenth Amendment. (*Id.*) Finally, Defendants argue that the allegations against Defendant Onufrak do not amount to a constitutional violation as a matter of law. (*Id.* at 2.) The Court will address each of the arguments in turn.

II. *Municipal Liability*

a. The Parties' Arguments

On its face, the FAC seems to only lay out three of the four claims against the Town, namely: (1) violations of Plaintiff's Fourteenth Amendment rights for failure to supervise; (2) the torts of assault and battery under the theory of respondeat superior; and (3) negligent supervision and retention pursuant to the laws of the State of New York. (FAC ¶¶ 91, 101, 106.) However, in the demand for judgment Plaintiff states that he also seeks "all monetary damages recoverable as a matter of law against defendant Southold pursuant to 42 U.S.C. § 1983 for defendant Flatley's use of excessive force in violation of Plaintiff's Fourth Amendment Rights." (*Id.* at 16.) Plaintiff then argues in his Memorandum in Opposition that his excessive force claim against the Town must be analyzed separately from his Fourteenth Amendment claims, which suggests that he meant to bring his excessive force claim against the Town as well. (Mem. in Opp. [DE 16] at 7; *see also* FAC at 1 (listing the claims and parties but failing to include the Town in the Fourth Amendment claim); ¶¶ 70–80 (expanding on the Fourth Amendment claim and never mentioning the Town).) Despite the confusing lack of specificity in the FAC, the Court will assume that Plaintiff brings each of his four claims against the Town for purposes of this motion to dismiss.

Defendants argue that the Town cannot be held liable for constitutional violations under respondeat superior, and that "[b]ecause there are no facts alleged to support *Monell* liability for the Town of Southold, the federal and state constitutional claims against it must be dismissed." (Mem. in Supp. at 6.) Defendants do not provide any authority or further information as to why the state constitutional claims should be dismissed, so the Court will not consider this argument.

In his Memorandum in Opposition, Plaintiff avers that the Town is subject to municipal liability because Sergeant Latham—a supervisor with policy-making authority—failed to supervise the Defendant Officers. (Mem. in Opp. at 8.) Specifically, Plaintiff argues that Sergeant Latham "was present in the police station, witnessed the unlawful conduct of Defendants Flatley and Onufrak, and permitted it to continue without intervening." (*Id.* (citing FAC ¶¶ 16–17, 51–54, 59).)

      b. Legal Standard: Municipal Liability under § 1983

In order to bring a § 1983 claim against a municipal defendant, a plaintiff must establish both a violation of his constitutional rights and that the violation was motivated by a municipal custom or policy. *See Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *see Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 686 (2d Cir. 2005) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."); *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004); *see also Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (noting that "the mere invocation of the 'pattern' or 'plan' will not suffice") (citations omitted); *Middleton v. City of New York*, 2006 U.S. Dist. Lexis 44320 (E.D.N.Y. 2006) (allegations of a isolated incident of police

misconduct will not suffice). A municipality cannot be held liable under Section 1983 on a respondeat superior theory. *Monell*, 436 U.S. at 691.

"To show a policy, custom, or practice, a plaintiff need not identify an express rule or regulation." *Patterson*, 375 F.3d at 226. Rather, the existence of a municipal policy or custom may be plead four ways. A plaintiff may allege "(1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of policymaking officials; or (4) a failure by policy makers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with municipal employees." *Calicchio v. Sachem Central Sch. Dist.*, 2015 WL 5944269, at *10 (E.D.N.Y. Oct. 13, 2015) (citing *Giscombe v. New York City Dept. of Educ.*, 2013 WL 829127, at *7 (S.D.N.Y. Feb. 28, 2013); *accord Bektic-Marrero v. Goldberg*, 850 F. Supp. 2d 418, 430 (S.D.N.Y. 2012)); *Zambrano–Lamhaouhi v. New York City Bd. of Educ.*, 866 F. Supp. 2d 147, 175 (E.D.N.Y. 2011).

The Supreme Court has long recognized that "[i]f the decision to adopt [a] particular course of action is properly made by [a] government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). "Municipal liability attaches only where the decision-maker possesses final authority to establish municipal policy with respect to the action ordered. . . . Authority to make municipal policy may be granted directly by legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law." *Id.* at

481–83 (citations and footnotes omitted).  In other words, "municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id*. at 483–84 (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) ("'policy' generally implies a course of action consciously chosen from among various alternatives.")).

When a plaintiff does not allege an unconstitutional official policy or an unconstitutional action ordered by an official policymaker, "municipal liability turns on the plaintiff['s] ability to attribute the subordinates' conduct to the actions or omissions of higher ranking officials with policymaking authority." *Amnesty Am. V. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004); *see also Doe v. City of New York*, 2018 WL 3824133, at *8 (E.D.N.Y. Aug. 9, 2018) (quoting the same).  To make out a failure to supervise claim, the plaintiff must show that the policymaking officials were deliberately indifferent.  *Id.*  In other words, "a policymaking official had notice of a potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was 'obvious,' and the policymaker's failure to investigate or rectify the situation evidences deliberate indifference, rather than mere negligence or bureaucratic inaction." *Amnesty*, 361 F.3d at 129.  Deliberate indifference is a stringent standard that requires proof that "the official made a conscious choice, and was not merely negligent." *Jones v. Town of East Haven*, 691 F.3d 72, 80–81 (2d Cir. 2012).

In examining an individual's status as a policymaker under *Monell*, "the official in question need not be a municipal policy for all purposes," but that individual "must be 'responsible under state law for making policy in that area of the [municipality's] business'" or must "have the power to make official policy on a particular issue." *McCants v. City of New*

*York*, 2014 WL 5475386, at *4 (E.D.N.Y. Oct. 29, 2014) (quoting *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000)) (internal quotation marks omitted); *see also St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). "Thus, the Court must 'ask whether [the] governmental official [is a] final policymaker[] for the local government in a particular area, or on [the] particular issue' involved in the action." *McCants*, 2014 WL 5475386, at *4 (citing *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 785 (1997)).

Courts in the Second Circuit have previously dismissed cases where the plaintiff did not allege any facts to state a plausible claim that the challenged action was directed by an official with *final policymaking authority*. *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 302 (S.D.N.Y. 2015) (granting a motion to dismiss where "there was simply no basis, on the facts alleged by Plaintiffs, for the Court to find that Plaintiffs plausibly alleged that . . . a police sergeant, had final policymaking authority"); *Anthony v. City of New* York, 2001 WL 741743, at *8 (S.D.N.Y. July 2, 2001) (dismissing a *Monell* claim where plaintiffs "put forth no basis to conclude that a Sergeant's actions can represent official policy"); *Powell v. Corr. Med. Care, Inc.*, 2014 WL 4229980, at *6 (S.D.N.Y. Aug. 14, 2014) (dismissing a *Monell* claim because the plaintiff "allege[d] no facts suggesting any individual defendant was a policymaker"); *Dilworth v. Goldberg*, 914 F. Supp. 2d 433, 454 (S.D.N.Y. 2012) (dismissing a *Monell* claim where "none of the facts indicate[d] that any of the persons employed . . . who committed allegedly unconstitutional acts [were] final policymakers"); *Vercillo v. Town/Village of Harrison*, 2002 WL 465338, at *2 (S.D.N.Y. March 26, 2002) (finding that "Police Officer Defendant Grant cannot be considered a policy maker" and granting the motion to dismiss).

    c. The Motion to Dismiss is Granted as to Defendant Town

Here, Plaintiff claims that Sergeant Latham is a "supervisor with policy-making authority[.]" (FAC ¶ 16.) While Defendants do not challenge this assertion, Plaintiff has failed to allege any plausible facts whatsoever that Sergeant Latham is a supervisor. Plaintiff only makes a bald assertion that he is a supervisor. At this stage, Plaintiff is not required to prove each element of his claim, but he must at least allege plausible facts. As there is no basis whatsoever for the Court to infer that Sergeant Latham is a supervisor for purposes of municipal liability, Plaintiff's Eighth and Fourteenth Amendment claims against the Town are dismissed. These claims are dismissed without prejudice for Plaintiff to amend the FAC within 30 days of the date of this Order.

    III. *Fourteenth Amendment Claim Against Defendant Officers*

As a preliminary matter, Plaintiff no longer brings any claims pursuant to the Eighth Amendment under the FAC so the Court will not address Defendants' argument that the Eighth Amendment claim should be dismissed. As the Federal Constitutional claims against the Town have already been dismissed, the Court will now evaluate the Fourteenth Amendment claim against Defendant Officers.

    a. Legal Standard

The Second Circuit has established that a "pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017); *see also Man Zhang v. City of New York*, 2018 WL 3187343, at *5 (S.D.N.Y. June 28, 2018) (quoting the same). "A pretrial detainee's claims are evaluated under the Due Process Clause because, [p]retrial detainees have not been

convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise." *Darnell*, 849 F.3d at 29 (quoting *Iqbal v. Hasty*, 490 F.3d 143, 168 (2d Cir. 2007) (internal quotation marks omitted).

To establish a § 1983 claim for unconstitutional conditions of confinement, the plaintiff must show "that the officers acted with deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29 (citing *Benjamin v. Fraser*, 343 F.3d 35, 50 (2d Cir. 2003)). The Second Circuit has explained that this means that a pretrial detainee must satisfy two prongs: (1) an objective prong "showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process[;]" and (2) a subjective prong, "showing that the officer acted with at least deliberate indifference to the challenged conditions." *Darnell*, 849 F. 3d at 29.

To establish the first prong—an objective deprivation—under the Fourteenth Amendment, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health . . . which include the risk of serious damage to physical and mental soundness." *Id.* at 30 (internal quotation marks and citations omitted). While there is no "static" test to determine if a deprivation is sufficiently serious, the Court does look at "contemporary standards of decency." *Id.* (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)). For example, a detainee may not be deprived of "basic human needs—*e.g.,* food, clothing, shelter, medical care, and reasonable safety—and they may not be exposed to conditions that pose an unreasonable risk of serious damage to [their] future health." *Darnell*, 849 F.3d at 30 (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)) (internal quotation marks omitted). The Second Circuit has noted that "a lack of hygienic items (in particular, toilet paper), can rise to the level of an objective deprivation." *Darell*, 849 F. 3d at 30 (citing *Walker*

*v. Schult*, 717 F. 3d 119, 127–28 (2d Cir. 2013)). A resulting serious injury is "unequivocally not a necessary element . . . ." *Darnell*, 849 F. 3d at 31.

To establish the second prong, the subjective element:

> The pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.

*Id.*, at 35. The Second Circuit has explained that in light of the Supreme Court's holding in *Kinglsey v. Hendrickson*, 135 S. Ct. 2466 (2015), the subjective prong is now defined objectively. *Id.*

b. The Motion to Dismiss is Denied as to Plaintiff's Fourteenth Amendment Claim

As discussed above, at the motion to dismiss stage a Complaint need only state a "plausible claim for relief," which is to say that "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678–79.

Here, Plaintiff pleads sufficient factual content for the court to draw a reasonable inference that Defendants are liable for violations of the Fourteenth Amendment. Under the first prong, Plaintiff has set out facts showing that the conditions posed an unreasonable risk of serious damage to his health. For example, Plaintiff alleges that he was handcuffed to a desk for hours without being allowed to sit or use the bathroom. (FAC ¶ 45.) The handcuffs were so tight that his hands lost feeling, and multiple requests to loosen the handcuffs were ignored. (*Id.* ¶ 46.) Additionally, Plaintiff was put into a cell without socks, shoes, or—most notably—toilet paper. (*Id.* ¶¶ 60–62.) As noted above, the Second Circuit has stated that a lack of toilet paper "in particular" can rise to the level of an objective deprivation. *Darell*, 849 F. 3d at 30 (citing

*Walker*, 717 F. 3d at 127–28). Accordingly, Plaintiff has pled sufficient facts for the Court to draw a reasonable inference that there has been an objective deprivation.

As to the second prong, Plaintiff has again pled sufficient facts for the Court to draw a reasonable inference that there has been a subjective deprivation. Regarding the painful and likely physically harmful handcuffing, Plaintiff has alleged facts that suggest that Defendants recklessly failed to act with reasonable care to mitigate the risk posed to Plaintiff. The relevant evidence includes Plaintiff's multiple requests to loosen the handcuffs, the fact that his hands were injured enough from the handcuffs that the hospital professionals felt compelled to photograph the bruises, and Defendants handcuffing Plaintiff to a desk in a standing position for hours without allowing him to use the bathroom or seek medical attention for the bleeding wound on his face. Regarding the lack of socks, shoes, and toilet paper, the allegation that Defendant Onufrak stated to Defendant Flatley "make sure you get his socks and shoes so that he'll be uncomfortable in there" suggests that the Defendant Officers acted intentionally to impose the conditions in Plaintiff's cell. This meets the subjective prong of the Fourteenth Amendment claim. (*See* FAC ¶ 61.) Accordingly, Plaintiff has sufficiently plead a claim for violations of his Fourteenth Amendment rights to survive the instant motion to dismiss.

IV. *Defendant Onufrak*

Defendants argue that Defendant Onufrak "cannot be held liable since he was not personally involved in any alleged constitutional deprivations and he is not a supervisory official." (Mem. in Supp. at 6.) In their Reply Memorandum, Defendants stated that the allegations against Defendant Onufrak were conclusory in nature. The only constitutional claim brought against Defendant Onufrak is for violations of Plaintiff's Fourteenth Amendment rights.

     a. Legal Standard

The legal standard for a Fourteenth Amendment violation is delineated above.

     b. The Motion to Dismiss is Denied as to the Claims Against Defendant Onufrak

With regards to the Fourteenth Amendment claim, Plaintiff alleges that Defendant Onufrak ignored his requests to loosen his handcuffs despite the fact that his hands were visibly bruised and that he was losing feeling in his hands. (FAC ¶ 58.) Plaintiff also claims that Defendant Onufrak denied his requests for medical attention, even with blood on his face. (*Id.* ¶¶ 47, 50.) Finally, Plaintiff states that Defendant Onufrak was one of the officers who put him in a cell with no toilet paper, and that Defendant Onufrak was the one who specifically stated to "make sure" to get Plaintiff's socks and shoes "so that he'll be uncomfortable in there." (*Id.* ¶¶ 58, 60–61.) These statements are not conclusory. As discussed above, Plaintiff has set out sufficient facts to make out both the objective and subjective prongs of a Fourteenth Amendment claim. As all of the allegations discussed above included conduct by Defendant Onufrak, Plaintiff has sufficiently alleged of violations of his Fourteenth Amendment rights by Defendant Onufrak to survive the instant motion to dismiss.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss pursuant to Rule 12(b)(6) is granted as to the Federal Constitutional claims against Defendant Town, but denied as to the claims against Defendant Officers. The Federal Constitutional claims against Defendant Town

are dismissed without prejudice for Plaintiff to amend his FAC within 30 days of the date of this Order.

**SO ORDERED.**

Dated: Central Islip, New York
August 31, 2018

                                             /s/
                                      Denis R. Hurley
                                      Unites States District Judge